IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BRENDA R.,[1]

       Plaintiff,                                     Civ. No. 1:23-cv-00064-MC

       v.                                                      OPINION AND ORDER

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

       Defendant.
_____

**MCSHANE, Judge**:

       Plaintiff Brenda R. seeks judicial review of a final decision of the Commissioner of

Social Security ("Commissioner") denying her applications for disability insurance benefits

("DIB") under Title II and supplemental security income ("SSI") under Title XVI of the Social

Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). On July 11,

2018, Plaintiff filed an application for DIB alleging disability beginning September 20, 2017. Tr.

252.[2] On October 9, 2018, Plaintiff also filed an application for SSI alleging disability beginning

September 20, 2017. Tr. 254. After a hearing, the Administrative Law Judge ("ALJ") determined

Plaintiff was not disabled under the Social Security Act (the "Act"). Tr. 17–33. Because the

_____

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial
of the last name of the non-governmental party.
[2] "Tr" refers to the Transcript of Social Security Administrative Record provided by the
Commissioner.

Commissioner's decision was not based on proper legal standards and was unsupported by substantial evidence, the Commissioner's decision is REVERSED and remanded for immediate payment of benefits.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). The burden of proof rests on the claimant for steps one through four, and on the Commissioner for step five. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the Commissioner's burden is to demonstrate that the

claimant can make an adjustment to other work existing in significant numbers in the national economy after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is considered disabled. *Id.* If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54.

Plaintiff is 54 years old and alleges disability due to anxiety, panic attacks, posttraumatic stress disorder ("PTSD"), major depressive disorder, alcohol use disorder, inability to focus, and memory issues. Tr. 20, 59, 62, 68–69, 83. Plaintiff has a GED and previous work experience as a receptionist and a data entry clerk. Tr. 59, 75.

After a hearing, the ALJ determined Plaintiff had not engaged in substantial gainful activity since her alleged onset date. Tr. 20. At step two, the ALJ determined Plaintiff had the following severe impairments: anxiety, posttraumatic stress disorder ("PTSD"), major depressive disorder, and alcohol use disorder. *Id.* Based on the medical and non-medical evidence of record, the ALJ concluded that, without the alcohol use disorder:

> claimant has had the residual functional capacity to perform a full range of work at all exertional levels [except]… [she] is limited to understanding and remembering simple and routine instructions, but would be unable to understand or remember more complex instructions. She is limited to carrying out and maintaining simple, routine tasks, consistent with a reasoning level of 2 and unskilled work as defined in the Dictionary of Occupational Titles ("DOT") (i.e., she would be unable to maintain more complex tasks). She is limited to goal-oriented work (such as housekeeper), but is unable to perform at a production rate pace (such as assembly-line work). She is limited to occasional contact with coworkers (where there is no teamwork or coordinated work required) and occasional interaction with the general public (where interaction is not required as an essential function of the job).

*Id.*

Relying on the testimony of a vocational expert, at step four the ALJ found that Plaintiff could not perform her past relevant work. Tr. 31. At step five, the ALJ made alternative findings that Plaintiff was capable of employment in the national economy as a marking clerk, an automobile detailer, and an industrial cleaner. Tr. 32. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. Tr. 33. The Appeals Council declined to grant review of the ALJ's decision and Plaintiff timely appealed. Tr. 1–3; Pl.'s Compl. ¶ 4, ECF No. 1. On appeal, Plaintiff argues that the ALJ erred by: (1) failing to provide specific, clear and convincing reasons for rejecting her subjective symptom testimony; and (2) finding the medical opinion of Gina Miller, M.D., only somewhat persuasive. Pl.'s Br. 14–20, ECF No. 11. Because the ALJ's determination, and Plaintiff's arguments, concern Plaintiff's mental health after she achieved sobriety, the opinion addresses whether Plaintiff would still be disabled if her substance abuse disorder were excluded.

## I.    Subjective Symptom Testimony

Plaintiff first argues that the ALJ erred in discounting her subjective symptom testimony. To determine whether a claimant's testimony about subjective pain or symptoms is credible, an ALJ performs a two-stage analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); 20 C.F.R. § 416.929. First, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090; 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Second, absent affirmative evidence that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for discounting the claimant's testimony regarding the severity of the symptoms. *Trevizo*, 871 F.3d at 678; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ must make findings that are sufficiently

specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). The Ninth Circuit demands more than a summary of the medical evidence and generic, high-level reasons why a claimant's allegations conflict with that evidence. *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). The Ninth Circuit "requires the ALJ to specifically identify the testimony she or he finds not to be credible and . . . explain what evidence undermines that testimony." *Id.*; *Brown-Hunter*, 806 F.3d at 494.

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms" about which the claimant complains. *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti*, 533 F.3d at 1040); *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2013). In some circumstances, an ALJ may reject subjective complaints where the claimant's "statements at her hearing do not comport with objective medical evidence in her medical record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). However, a lack of objective evidence may not be the sole basis for rejecting a claimant's subjective complaints. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

At the hearing, Plaintiff testified that she has been suffering from anxiety and panic attacks stemming from her PTSD due to significant mental and physical trauma experienced in 2017. Tr. 53–55. She testified that she rarely leaves her home, and that she must take anxiety medication when she does in order to function. Tr. 56. Plaintiff testified that her anxiety has

worsened since achieving sobriety. Tr. 67. She also testified that her anxiety causes her to

become incredibly emotional and lose the ability to speak to, and be around, strangers. Tr. 59.

Plaintiff testified that her neighbor drives her to physical therapy rather than a medical transport

service because she could not be around a stranger. Tr. 60. Plaintiff explained that she wears

earbuds at physical therapy in order to avoid interacting with the few other people there. Tr. 60.

She further testified that her neighbor grocery shops and picks up medications for her. Tr. 65.

　　　Plaintiff also attends daily Alcoholics Anonymous meetings via Zoom because she does

not feel safe attending in person. Tr. 61. Plaintiff testified that if someone becomes verbally

aggressive, she can simply close her computer screen and leave. Tr. 61. Plaintiff stated that she

co-chairs AA meetings once a week which involves leading the discussion and engaging with

other participants, but she does not attend in person because she does not feel safe around others,

and there are as many as five other co-chairs in case she needs to leave. Tr. 57–58, 61. As a part

of her probation, plaintiff attends mandatory in person drug and alcohol counseling, which she

can do because the men and women are separated, and attendees sit at least six feet apart. Tr. 66.

　　　 Due to her medications, Plaintiff has issues sleeping both too much and not enough,

although her medications do help her stay calm during her AA meetings. Tr. 62. Plaintiff further

testified that she has memory problems and issues focusing. Tr. 62, 66–67.

　　　The ALJ determined that Plaintiff's "statements concerning the intensity, persistence and

limiting effects of these symptoms are not entirely consistent with the medical evidence and

other evidence in the record." Tr. 29. The ALJ discounted Plaintiff's subjective symptom

complaints because (1) her complaints were inconsistent with her activities of daily living and

(2) she was improving with treatment.

### 1. Activities of Daily Living

An ALJ may rely on daily living activities as a basis for discounting subjective symptoms if the claimant's activities contradict their testimony or meet the threshold for transferable work skills. *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). For daily activities to discount subjective symptom testimony, the activities need not be equivalent to full-time work; it is enough that the claimant's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. Claimants do not, however, need to be utterly incapacitated to receive disability benefits, and an ability to complete certain routine activities is insufficient to discount subjective symptom testimony. *See id.* at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)).

The ALJ discounted Plaintiff's subjective symptom testimony because, while she complained of having issues with her focus and memory, she was still able to chair AA meetings once a week as well as attend daily AA meetings and complete her bookwork. Tr. 30, 57–58, 60, 62. However, consistent with the rest of her testimony, Plaintiff explained that five others help co-chair her AA meetings in case her anxiety becomes too much, that she co-chairs meetings only once a week, and that meetings are only one hour and fifteen minutes. Tr. 58, 63. The ALJ also relied on Plaintiff's statements that she reads a lot, watches documentaries, and is a fan of, and follows, football. Tr. 67. Again, however, the ALJ did not explain how these hobbies undermine Plaintiff's testimony. This fails to provide a specific, clear and convincing basis upon which to discount Plaintiff's subjective symptom testimony.

//

//

2. **Improvement with Treatment**

A claimant's improvement with treatment is "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. §§ 404.1529(c)(3). For example, "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Symptom improvement, however, must be weighed within the context of an "overall diagnostic picture." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001); *see also Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("Occasional symptom-free periods . . . are not inconsistent with disability.").

The ALJ discounted Plaintiff's complaints because her post-sobriety mental health treatment, while sparse, showed that not only was she improving with treatment, but that she was no longer participating in mental health treatment. Tr. 29–30.

Plaintiff testified that her anxiety had gotten worse since attaining sobriety on March 6, 2021. Tr. 64–65. A little over a year before achieving sobriety, in February 2020, Plaintiff's records show she was suffering from high levels of anxiety due to massive trauma, resulting in sleep issues, nightmares, hypervigilance, suicidal ideation, at least one suicide attempt, and depression. Tr. 746–47. She was also experiencing flashbacks. Tr. 746. Records from that time also indicate that she had no problems with her memory, cognition, or thought processes. Tr. 748–49. On March 10, 2021, four days after achieving sobriety, she presented with a blunted affect and was sad or depressed as well as nervous or anxious. Tr. 740. She also presented with normal and unremarkable insight and judgment, along with thought content and process. Tr. 739–40. Her memory was not tested. Tr. 740. At the time, she was still suffering from PTSD and panic disorder, with panic attacks occurring three or four times a week. Tr. 741. On March 23,

2021, Plaintiff was engaged in learning distress tolerance skills and identifying her triggers. Tr. 734–35. She also reported that her medications were working for her. Tr. 735. On April 8, 2021, she was practicing mindfulness and breathing techniques, resulting in her nightmares getting better, and reporting that she had not had nightmares in the two weeks since her last session. Tr. 733. On April 30, 2021, she reported "start[ing] my day with a clear mind," learning and using her distress tolerance skills, using positive affirmations, and that she was mentoring others. Tr. 731. Following her April 30 session, she stopped participating and her account was closed in June, despite reporting that she believed in her treatment plan. Tr. 742–44. On September 22, 2021, Plaintiff's primary care physician reported that her mental health symptoms were improving, but that they were still severe at times, and that it was unlikely she could work because she would need frequent time off and accommodations, though she did not elaborate. Tr. 870. The report also stated Plaintiff was sober and happy with her progress and that she attended both AA and NA ("Narcotics Anonymous") regularly. Tr. 871. The report further noted that she still struggles in public spaces even though she has been going out for occasional walks, and that her panic attacks had improved, but she was still having them. Tr. 871.

Plaintiff's drug and alcohol treatment therapy records from February to December 2021 also indicate that she participated appropriately and that there were no significant changes reported or observed when it came to her mood, thought processes, and behavior, though they did support there being difficulty in being around men. Tr. 29, citing Tr. 938, 951, 959, 974, 990, 1032, 1076, 1096, 1133, 1144, 1175, 1181.

Given the record above, it is clear that while Plaintiff's records had signs of improvement, her anxiety had not seen any significant improvement such that Plaintiff would be

capable of full-time work, and her PTSD had improved only with respect to the lessening of

nightmares. Therefore, the ALJ erred in discounting her subjective symptom testimony.

## II.    Medical Opinion Evidence

Plaintiff next argues that the ALJ failed to properly evaluate the medical opinion of Gina

Miller, M.D. Because Plaintiff filed her application after March 27, 2017, revised regulations

regarding the evaluation of medical source opinions apply to his claim. *See* Revisions to Rules

Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017)

(codified at 20 C.F.R. pts. 404 & 416)). The revised rules provide that the Social Security

Administration will evaluate medical opinions according to the following factors: supportability;

consistency; relationship with the claimant; specialization; and other factors such as the medical

source's familiarity with other evidence in the record or with disability program requirements.

20 C.F.R. § 416.920c(c)(1)-(5); *see Tyrone W. v. Saul*, No. 3:19-cv-01719-IM, 2020 WL

6363839, at *7 (D. Or. Oct. 28, 2020). "Supportability" and "consistency" are the most important

factors to be considered when evaluating the persuasiveness of medical opinions and, therefore,

the ALJ is required to explain how both factors were considered. *See* 20 C.F.R. §

404.1520c(b)(2).

"Supportability means the extent to which a medical source supports the medical opinion

by explaining the 'relevant . . . objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th

785,791–92 (citing 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a

medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical

sources in the claim.'" *Id.* at 792 (citing 20 C.F.R. § 404.1520c(c)(2)). Additionally, "[t]he ALJ

may but is not required to explain how other factors were considered, as appropriate, including

relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of

examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Linda F. v. Comm'r Soc. Sec. Admin.*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020).

The ALJ's decision finding Dr. Miller's opinion unpersuasive is not supported by substantial evidence. *See Woods*, 32 F.4th at 787 (noting that under the new regulations, "an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence."). The ALJ concluded there was little evidence in the record to support Dr. Miller's opinion that Plaintiff could not attain full time employment due to her PTSD, which resulted in Plaintiff experiencing high levels of anxiety, nightmares, hypervigilance, isolation, depression, insomnia, and panic attacks. Tr. 39, citing Tr. 851. Furthermore, what evidence there was contradicted Dr. Miller's findings. Tr. 39. Dr. Miller noted that Plaintiff experienced physical symptoms due to her anxiety, including shakiness and visual distortions that make writing difficult. Tr. 851. Dr. Miller opined that Plaintiff's panic attacks and hypervigilance would not enable her to work outside of her home for six hours or more per day and would also limit her ability to have positive and sustained interactions with coworkers. Tr. 851. Dr. Miller further opined that Plaintiff's physical symptoms would cause her to miss scheduled obligations, that she would be unable to work 40 hours per week even with special accommodations, and that she would require excessive absences. Tr. 851. Dr. Miller has been treating the Plaintiff since June 21, 2018, and based her opinion on both a chart review and on her conversations with Plaintiff. Tr. 851.

A review of the record does not support the ALJ's findings. The ALJ determined that Plaintiff's nightmares were improving, that she was helping and mentoring others, and that her

Linn County Mental Health treatment file was closed in June 2021. Tr. 30, citing Tr. 733, 736, 742. These records, however, do not contradict Dr. Miller's assessment. These records only indicate that Plaintiff's nightmares were improving, but they make no mention of her other mental health issues, and they do not take into account that most of Plaintiff's interactions with others happened virtually.

The ALJ also noted that mental status examinations were within normal limits, except for her appearing anxious, nervous, and depressed. Tr. 30, citing Tr. 739–40. The record the ALJ cites reflects that Plaintiff had appropriate appearance, insight, and judgment. Tr. 739–40. The record also noted that Plaintiff had good eye contact and general health, along with unremarkable perception, thought process and content, speech, and motor activity. Tr. 739–40. However, plaintiff's appearance of having "consistently cooperative, polite behavior during examinations and consistently good eye contact" is not a valid observation because it does not contradict plaintiff's symptoms. *See Ghanim*, 763 F.3d at 1164 (rejecting ALJ's reliance on the claimant's "good eye contact, organized and logical thought content, and focused attention" because "[t]hese observations of cognitive functioning during therapy sessions [did] not contradict [the claimant's] reported symptoms of depression and social anxiety").

Lastly, the ALJ indicated that Plaintiff's activities since achieving sobriety support her significant improvement. Tr. 30. These activities were addressed above and do not form a valid basis for discounting the opinion of Plaintiff's medical providers.

Given the above, substantial evidence does not support the ALJ's finding that Dr. Miller's opinion was unpersuasive.

//

//

12 – OPINION AND ORDER

### III.    Remedy

Because the ALJ erred, the question is whether to remand for further administrative proceedings or an award of benefits. Generally, "when an ALJ's denial of benefits is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012), quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). However, an award of benefits can be directed "where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Remand for calculation of benefits is only appropriate where the credit-as-true standard has been satisfied, which requires:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison*, 759 F.3d at 1020 (citations omitted).

This is a rare instance where remand for an award of benefits is appropriate. Here, Plaintiff satisfies all three requirements. The record is fully developed and there are no ambiguities that further administrative proceedings need resolve. As explained above, the ALJ committed harmful error in discounting Plaintiff's subjective symptom testimony and in rejecting the medical opinion of Dr. Miller. Credited as true, Plaintiff's testimony and the discounted medical opinion, combined with the vocational expert's testimony, establish that Plaintiff is disabled under the Act. Plaintiff testified that she struggled being in public, needed anxiety medication in order to function when she rarely left her home, and could not physically be around others without fear. Tr. 56, 60–61, 70. Dr. Miller opined that Plaintiff still experienced high levels of anxiety, nightmares, hypervigilance, isolation, depression, insomnia, and panic

attacks, none of which would allow her to be outside the home for six or more hours per day. Tr. 851. The vocational expert testified that, in his experience, a person who would be off task for 20 percent of a workday or who would miss more than two days a month would be unable to retain competitive employment. Tr. 77–79. Moreover, consideration of the record as a whole convinces the Court that Plaintiff is disabled. The Court sees no purpose for further proceedings

## **CONCLUSION**

The decision of the Commissioner is REVERSED and this matter is REMANDED for calculation of benefits.

IT IS SO ORDERED.

DATED this 30th day of May, 2024.

_____s/Michael J. McShane_____
Michael McShane
United States District Judge
